UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THERESA MCKILLIP,

               Plaintiff,

       v.                                 **DECISION AND ORDER**
                                       18-CV-854S

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

_____


      1.      Plaintiff Theresa McKillip brings this action pursuant to the Social Security

Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security

that denied her application for supplemental security income under Title XVI of the Act.

(Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.      Plaintiff protectively filed her application with the Social Security

Administration on September 11, 2014.  (R.[1] at 43, 173.)  Plaintiff alleged disability

beginning on December 21, 2013, due to fibromyalgia; muscle spasms; balance issues;

inability to stand longer than 10 minutes, sit longer than 20 minutes, and walk longer than

40 minutes; retaining water; chronic pain; incontinence; numbness in legs; possible

diabetes; depression; anxiety; feelings of paranoia; and restless leg syndrome—mostly

at night. (R. at 201.)  Plaintiff's application was denied (R. at 99-105), and Plaintiff

thereafter requested a hearing before an administrative law judge ("ALJ") (R. at 111.)

      3.      On April 5, 2017, ALJ Ellen Parker Bush held a video hearing at which

Plaintiff—represented by counsel—and Vocational Expert Lynn Paulson appeared and

_____

[1] Citations to the underlying administrative record are designated as "R."

testified. (R. at 40-78.) At the time of the hearing, Plaintiff was 35 years old (R. at 50, 173), with a 12th grade education and no relevant past work experience. (R. at 52.)

4.    The ALJ considered the case *de novo* and, on August 9, 2017, issued a written decision denying Plaintiff's application for benefits. (R. at 10-25.) On June 7, 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1-6.) Plaintiff filed the current action, challenging the Commissioner's final decision,[2] on August 2, 2018. (Docket No. 1.)

5.    Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 11, 14.) Plaintiff filed a response on July 3, 2019 (Docket No. 15), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is denied and Defendant's motion is granted.

6.    A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842, 852 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the

---

[2] The ALJ's August 9, 2017 decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7.     "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119, 126-127 (1987).

9.     The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical

or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work.  Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10.    Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66, 70 (1983).

11.    The ALJ analyzed Plaintiff's claim for benefits under the process set forth above.  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 17, 2014, the application date.  (R. at 12.)  At step two, the ALJ found that Plaintiff has the following severe impairments: fibromyalgia/chronic pain syndrome;

degenerative disc disease; major depressive disorder; panic disorder without agoraphobia; generalized anxiety disorder; and attention-deficit hyperactivity disorder ("ADHD").  Id.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 13.)

12.	Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with certain exceptions:

> [Plaintiff] can only sit for thirty minutes, stand for thirty minutes, or walk for thirty minutes at a time and would need to alternate positions within those thirty-minute requirements. She can only occasionally climb stairs, ramps, ladders, ropes, and scaffolds.  She can only occasionally balance, stoop, kneel, crouch, and crawl.  The claimant must avoid concentrated exposure to temperature extremes, humidity, and respiratory irritants.  She must avoid moderate exposure to hazards (such as unprotected heights and machinery with external moving parts).  She cannot perform commercial driving.  The claimant is limited to simple tasks, and she can sustain attention and concentration long enough to perform those simple tasks.  She can maintain [a] regular schedule and make simple decisions.  The claimant cannot work in environments with fast pace, strict quota, or frequent changes in tasks.  She can relate adequately to others but can have only occasional interaction with supervisors and coworkers and no work in team and tandem.  She can have only brief superficial interaction with the general public.

(R. at 14-15.)

13.	At step four, the ALJ found Plaintiff does not have past relevant work.  (R. at 23, 71.)  At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. at 23-24.)  Accordingly, the ALJ found that Plaintiff is not disabled.  (R. at 24-25.)

14.     Plaintiff argues that the Commissioner's denial of benefits is not supported by substantial evidence because (1) the ALJ improperly rejected the opinion of a treating nurse practitioner; (2) the ALJ's RFC determination is unsupported; and (3) the ALJ failed to properly evaluate Plaintiff's subjective complaints. (Docket No. 11 at 17-30.) For the reasons that follow, these arguments are unavailing.

15.     Plaintiff first contends that the ALJ erred in evaluating the opinion of Jennifer Schaaf, NP, because the ALJ "failed to appropriately consider the treating source rule, and rejected [the opinion] when it deserved greater weight" without providing "an appropriate explanation." Id. at 17. This argument fails.

16.     In general, the "opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence." Rosa v. Callahan, 168 F.3d 72, 78-79 (2d Cir. 1999); see also Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008); 20 C.F.R. § 404.1527.

17.     However SSA regulations applicable to Plaintiff's claim make it clear that "a nurse practitioner is not an acceptable medical source" and is therefore "not a treating source subject to the treating physician rule." Rockwood v. Astrue, 614 F.Supp.2d 252, 270 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1513(d), 416.913(d)); see also SSR 06-03p, 2006 SSR LEXIS 5. Rather, nurse practitioners are considered "'other sources' whose opinions may be considered with respect to the severity of the claimant's impairment and ability to work, but need not be assigned controlling weight." Genier v. Astrue, 298 F. App'x 105, 108 (2d Cir. 2008).

18.     Nevertheless, while "an opinion from a nurse practitioner is not a medical opinion that is entitled to any particular weight," Taylor v. Colvin, No. 3:14-CV-0928, 2016

U.S. Dist. LEXIS 31312, at *16 (N.D.N.Y. Mar. 11, 2016), "an ALJ has an affirmative duty to address opinions by non-acceptable medical sources and explain the weight assigned to those opinions." Pickett v. Colvin, No. 3:13-CV-776, 2015 U.S. Dist. LEXIS 132298, at *23 (N.D.N.Y. Sept. 30, 2015) (citing Saxon v. Astrue, 781 F. Supp. 2d 92, 104 (N.D.N.Y. Mar. 4, 2011) ("The ALJ is free to conclude that the opinion of [an 'other source'] is not entitled to any weight, however, the ALJ must explain that decision")).

19.     In doing so, the ALJ must consider:

> The length and frequency of the treating relationship; the nature and extent of the relationship; the amount of evidence the source presents to support his or her opinion; the consistency of the opinion with the record; the source's area of specialization; and any other factors the claimant brings to the ALJ.

Vincent v. Berryhill, No. 16-CV-527, 2018 U.S. Dist. LEXIS 170224, at *6-7 (W.D.N.Y. Oct. 2, 2018).

20.     However, the ALJ's explanation does not require a "slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear." Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (citing Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004)).

21.     At issue here is the ALJ's evaluation of two written opinions submitted by nurse practitioner Jennifer Schaaf.  On September 1, 2016, Ms. Schaaf completed a form for the NYS Office of Temporary and Disability Assistance.  (R. at 1213-14.)  Ms. Schaaf indicated that Plaintiff was originally diagnosed with generalized anxiety disorder with panic disorder, fibromyalgia, and recurrent major depression on August 26, 2016.  (R. at 1213.)  The form also indicates a diagnosis of lumbosacral degenerative disc disease but lists only a question mark in the spot for date of original diagnosis.  Id.  Ms. Schaaf

checked boxes to indicate that Plaintiff is "moderately limited" in walking, sitting, maintaining attention and concentration, interacting appropriately with others, and ability to function in a work setting at a consistent pace. (R. at 1214.)

22.     Similarly, she indicated that Plaintiff is "very limited" in standing, lifting, carrying, pushing, pulling, bending, stairs or other climbing, and maintaining socially appropriate behavior without exhibiting behavior extremes. Id. Ms. Schaaf wrote that "[Plaintiff is] unable to stand/walk long periods [and is] unable to function in large, loud, crowded settings." Id. Ms. Schaaf also noted that Plaintiff's panic disorder would preclude work in "loud, crowded, or stressful work conditions" and that "[Plaintiff] cannot stand for longer than 15 minutes" and "needs to be able to change positions frequently" when sitting. Id.

23.     The ALJ gave "no weight" to this opinion because it "is not supported by the objective medical evidence," which "does not establish substantial limitations in strength and mobility." (R. at 23.) The ALJ also noted that "the evidence that [Plaintiff] is generally cooperative and appropriate is inconsistent with Ms. Schaaf's statement that [she] is very limited in maintaining socially appropriate behavior." Id.

24.     Ms. Schaaf also completed a fibromyalgia questionnaire and a medical source statement form on March 7, 2017. (R. at 1175-81.) Ms. Schaaf reported that she saw Plaintiff "every 3 months for the last 9 months" (R. at 1175, 1177) and indicated via a checkmark that Plaintiff's pain is "constantly" severe enough to interfere with attention and concentration needed to perform even simple work tasks. (R. at 1176, 1178.) It is noted that "[Plaintiff] states pain is worsening" and clinical findings and objective signs included "bilateral lower extremity weakness, decreased ROM in lumbar [and] cervical

spine, muscle spasm and tender trigger points throughout." (R. at 1177.) Ms. Schaaf also opined that Plaintiff is incapable of even "low stress" jobs because she experiences "[increased] anxiety in stressful situations." (R. at 1178.)

25. Next, Ms. Schaaf indicated that Plaintiff could walk only one city block without rest or severe pain, could sit for only 5 minutes before needing to get up, and could stand zero minutes before needing to sit down or walk around. Id. According to Ms. Schaaf, Plaintiff could sit or stand/walk for less than 2 hours in an 8-hour work day, would need to walk for 5 minutes once every 10 minutes, would require 10-15-minute unscheduled breaks every hour, and would need a job that permits shifting positions at will. (R. at 1179.) In addition, if working a sedentary job, Plaintiff would need to elevate her legs to waist level for 50% of the workday and must use a cane or other assistive device for occasional standing or walking. Id.

26. Ms. Schaaf also indicated that Plaintiff could "never" lift and carry less than 10 pounds; could "never" twist, stoop, crouch, squat, or climb; could "never" look up, look down, or turn her head right or left; and could only "rarely" hold her head in a static position. (R. at 1179-80.) Finally, Ms. Schaaf opined that Plaintiff would likely be absent from work more than 4 days per month as a result of her impairments and had been limited as described for "at least 5 years." (R. at 1180.)

27. The ALJ discussed this opinion in detail but found that "Ms. Schaaf's opinion has no support in her own treatment records or from the medical record as a whole." (R. at 21.) The ALJ observed that "evidence of an assistive device in the record is limited to a brief use of a cane after a slip and fall accident" but "[t]here are no regular findings or recommendations of either an assistive device or elevation of the legs." Id. Moreover,

the ALJ questioned how Ms. Schaaf could legitimately "apply her assessment of [Plaintiff's] symptoms and limitation to the previous five years even though she confirmed that she had only treated [Plaintiff] for the past nine months." (R. at 21-22.) Because of "[t]hese inconsistencies and lack of support," the ALJ found that Ms. Schaaf's opinion is entitled to no weight. (R. at 22.)

28.    This Court finds that the ALJ's assessment of Ms. Schaaf's opinion is fully supported by the record and by Ms. Schaaf's own treatment notes.

29.    On December 22, 2016, Ms. Schaaf noted that Plaintiff reported a recent "increase in pain and fatigue" over the past few weeks, although "[p]ain control has been adequate most of the time" without side effects. (R. at 1188.) The record indicates that Plaintiff is a "[h]eavy tobacco smoker" who "occasionally consumes beer", "sporadically uses marijuana", and "exercises regularly." (R. at 1190.) Plaintiff's regular exercise involved physical therapy stretches and "walking" but there is no mention of a cane or other assistive device. Id. Upon examination, Plaintiff had limited spinal ROM but was "[a]mbulating without difficulty" with 5/5 muscle strength. Id.

30.    With respect to chronic pain syndrome, Plaintiff was "meeting pain and functional goals" and was to continue her present regimen. Id. However recent changes in Plaintiff's condition—"[i]ncreasing weakness, vision changes, [and] balance issues"— were concerning and Plaintiff was referred to a neurologist for evaluation. Id.

31.    Ms. Schaaf also reminded Plaintiff that "good nutrition, physical activity, and rest are as important as [her] medications" and encouraged her to lose weight and "[b]e physically active at least 60-90 minutes per day." (R. at 1191.)

32.     During a routine appointment on February 14, 2017, Ms. Schaaf noted that "[Plaintiff's] lawyer will be sending over disability update form." (R. at 1201.) Ms. Schaaf's notes indicate that Plaintiff described recent increases in pain and fatigue and a decline in functional level "over the past few weeks." Id. Plaintiff also reported that "her anxiety and depression symptoms have escalated over the last two weeks" and that "she recently broke up with her boyfriend and she and her two sons have moved back in with her parents." Id.

33.     Plaintiff further stated that "she has had increasing weakness in her legs, problems with balance and coordination, involuntary muscle jerks, and blurry/double vision over the past 2-3 months" but Ms. Schaaf noted that the January 19, 2017, MRI of Plaintiff's brain (R. at 1196) is "unremarkable." (R. at 1202.) The record also notes that "[Plaintiff] continues to smoke 1ppd" and she is "[n]ot interested in discussing cessation today." Id.

34.     Once again, Plaintiff's large muscle groups and trigger points were tender to palpation and she had a limited spinal ROM, but she was "[a]mbulating without difficulty" and demonstrated 5/5 muscle strength. (R. at 1203.) Plaintiff was advised to "[t]ry to get outside and walk every day [and] [r]each out to family and friends for emotional support." Id. There is no mention of Plaintiff's need for a cane or any inability to interact appropriately with others in Ms. Schaaf's treatment notes. (R. at 1201-1205.)

35.     With respect to Plaintiff's fibromyalgia, she was advised to lose weight, stop smoking, limit caffeine intake, and "[c]onsider massage and water walking/swimming to help with symptoms." (R. at 1204.) Ms. Schaaf also instructed Plaintiff to continue her

current medications but questioned whether "the side effects of Lyrica may [be] the cause of [her] fatigue and weakness." Id.

36.     The ALJ found Ms. Schaaf's suggestion that "[Plaintiff's] neurological symptoms arose from prescribed medication side-effects" to be inconsistent with her written opinions but referenced the wrong page number in her discussion of the evidence. (R. at 21.)  The page number cited here actually references a March 1, 2017, opinion in which Dr. Lorie Lashbrook echoes Ms. Schaaf's concern that "the Lyrica and maybe alprazolam are contributing to some of the complaints."  (R. at 1211).  Plaintiff contends this typo indicates that the ALJ failed to consider "medical evidence supporting [Ms. Schaaf's] opinion." (Docket No. 11 at 19.)  This argument is without merit.

37.     Ms. Schaaf saw Plaintiff again on February 27, 2017.  (R. at 1206.)  This time, Plaintiff was wearing a neck brace and complained that her "neck keeps popping out." Id.  Plaintiff also "[b]rought in paperwork for disability hearing that is coming up." Id.

38.     Ms. Schaaf's notes indicate that Plaintiff had presented to the emergency room the day before complaining of neck pain and headache and that she had been prescribed prednisone, but that Plaintiff "has not yet picked the steroids up from the pharmacy" and was instead requesting "something stronger" for the pain. Id.

39.     Plaintiff's ROM was "severely limited due to pain" and Ms. Schaaf instructed her to apply heat and ice and to "[p]ick up the steroid prescription from the pharmacy and take as prescribed."  (R. at 1208.)

40.     Plaintiff acknowledges that there was an "exacerbation" of Plaintiff's neck issues after February 14, 2017, and further concedes that "these examinations do not

show [she] required an assistive device." (Docket No. 11 at 20.) Nevertheless, Plaintiff argues, the ALJ's rejection of Ms. Schaaf's opinion requires remand. Id. at 24.

41.     This Court disagrees. Ms. Schaaf's own notes indicate that she encouraged Plaintiff to exercise and walk, but do not indicate that Plaintiff required a cane. It is also clear that Plaintiff reported recent changes in symptoms, a fact that belies Ms. Schaaf's opinion that she had displayed such symptoms for "at least 5 years." (R. at 1180.) Moreover, beyond an isolated report of neck pain coincident with Plaintiff's delivery of "paperwork for disability hearing that is coming up" (R. at 1206), nothing in the record indicates that Plaintiff has neck pain so severe that she can "never" look up, down, right or left, and only "rarely" hold her head in a static position (R. at 1180.) Therefore, this Court finds no error in the ALJ's rejection of Ms. Schaaf's unsupported opinions.

42.     Plaintiff also argues that the ALJ failed to properly consider her subjective complaints regarding her fibromyalgia. (Docket No. 11 at 27.)

43.     An ALJ must consider a claimant's subjective complaints, but "is not required to accept [them] without question." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010).

44.     Plaintiff points to multiple examinations that revealed tender trigger points and reminds this Court that "there is no objective test for fibromyalgia" and therefore "the credibility of [Plaintiff's] testimony regarding her symptoms takes on substantially increased significance in the ALJ's evaluation of the evidence." (Docket No. 11 at 28.) Here, Plaintiff contends, "the ALJ failed to give Plaintiff this 'substantially increased significance.'" Id.

45. Plaintiff seems to misconstrue the law on this issue. The lack of objective tests to demonstrate the presence of fibromyalgia does not mean that Plaintiff's subjective statements are simply assumed to be credible. See Coyle v. Apfel, 66 F. Supp. 2d 368, 376-77 (N.D.N.Y. Oct. 7, 1999). Rather, it is the ALJ's own assessment of Plaintiff's credibility that takes on increased importance in the context of fibromyalgia cases. Id.

46. In such cases, an ALJ is free to "reject[] subjective testimony concerning pain and other symptoms" but "must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether [the] determination is supported by substantial evidence." Id. (citing Brandon v. Bowen, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).

47. Here, the ALJ found that Plaintiff's history of pain and tender trigger points supported a determination that her fibromyalgia/chronic pain syndrome are severe enough to "impose some physical functional limitations." (R. at 16.) However, the ALJ also found that the record of conservative treatment combined with "stable physical findings and physical function" failed to substantiate Plaintiff's allegations of debilitating physical pain. (R. at 16-18.)

48. In support of this determination, the ALJ noted that despite some occasional difficulty due to pain, Plaintiff is "generally independent" in activities of daily living including cooking, cleaning, grocery shopping, transportation and childcare. (R. at 21.) The ALJ also correctly pointed out that Plaintiff failed to comply with treatment on multiple occasions. (R. at 17-18.)

49. On October 20, 2015, Plaintiff was discharged from physical therapy after attending only one session. (R. at 1007.) She was again discharged for lack of

14

attendance on April 27, 2016, this time after less than one month of treatment.  (R. at 1156).  Records from an appointment with Ms. Schaaf on March 2, 2016, also indicate that Plaintiff was discharged from pain management after testing positive for THC.  (R. at 1079).  Ms. Schaaf noted this was Plaintiff's second violation despite having been counseled and warned about THC use and violation of her controlled substance agreement.  Id.  The ALJ also found that "[Plaintiff's] decision not to pick up prescribed medication as ordered by an emergency room physician does not establish consistent efforts at treatment."  (R. at 18.)

50.    This Court finds no error in the ALJ's evaluation of Plaintiff's subjective complaints.  See Wilson v. Colvin, No. 6:16-CV-6509, 2017 U.S. Dist. LEXIS 102104, at *17 (W.D.N.Y. 2017) ("It was within the ALJ's discretion to conclude that Plaintiff's allegations of debilitating pain were undermined by her failure to follow up on the multiple—relatively conservative—treatment options offered to her").  Accordingly, this argument also fails.

51.    Finally, Plaintiff contends that the ALJ's determination that Plaintiff is limited to sitting, standing, or walking for thirty minutes at a time and would need to alternate positions is a "highly specific" limitation that has "nothing in the record to support it" and is instead the product of the ALJ's "own surmise."  (Docket No. 11 at 27 (citing Cosnyka v. Colvin, 576 F. App'x 43, 46 (2d Cir. 2014) (summary order)).

52.    A claimant's RFC reflects "what an individual can still do despite his or her limitations."  Desmond v. Astrue, No. 11-CV-818, 2012 U.S. Dist. LEXIS 179805, at *72012 (N.D.N.Y. Dec. 20, 2012) (quoting Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999)).  The ALJ will assess a claimant's RFC "based on all of the relevant medical and

other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  This assessment does not have to "perfectly correspond with any of the medical source opinions cited in [the ALJ's] decision;" rather, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole."  Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) (citing Richardson v. Perales, 402 U.S. 389, 399, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)).

53.     Plaintiff argues that "nothing in the record" supports the sit/stand/walk and alternating positions limitations in the ALJ's RFC assessment.  (Docket No. 11 at 27.)  However, the ALJ afforded partial weight to the opinion of nurse practitioner Peggy Kestler who, on February 17, 2015, opined that Plaintiff has "moderate" limitations in walking and standing, but no limitations in sitting.  (R. at 1216.)  The ALJ noted that the term "moderate" is imprecise but deemed the assessment "generally consistent with the medical record" in that it demonstrated that "[Plaintiff] has some difficulties that do not reach a debilitating level."  (R. at 22.)

54.     Moreover, Plaintiff's own testimony endorses the necessity of such limitations.  Plaintiff testified that she needs to alternate positions after sitting for 15-20 minutes or standing for 10-15 minutes and can walk only one block before needing to rest.  (R. at 63.)  Plaintiff also alternated between sitting and standing at the hearing.  (R. at 50, 59.)  Plaintiff further testified that she doesn't drive often because "sitting for very long gets uncomfortable" and she can't alternate positions while driving but admitted that none of her doctors have instructed her to stop driving.  (R. at 48.)

55.     Plaintiff's testimony suggests that a limitation on sitting, standing and walking is appropriate.  However, as previously discussed, the ALJ determined that the

record "does not substantiate the alleged degree of [Plaintiff's] symptoms and physical difficulties." (R. at 16.) Nevertheless, the ALJ did "accept that [Plaintiff's] pain may impose some physical functional limitations" and found that the record supports the imposition of "moderate postural and environmental restrictions." Id.

56. An ALJ "cannot arbitrarily substitute his own judgment for competent medical opinion." McBrayer v. Sec'y of Health & Human Servs., 712 F.2d 795, 799 (2d Cir. 1983). However "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002).

57. It is "the ALJ's duty to formulate the RFC after evaluating the opinion evidence, treatment records, and the testimony of the claimant." Davis v. Colvin, No. 15-CV-6695P, 2017 U.S. Dist. LEXIS 27058, at *34 (W.D.N.Y. Feb. 27, 2017) (finding that the ALJ did not err by assessing a one-hour standing limitation even though it did not precisely correspond to any medical opinion because the plaintiff's daily activities, treatment history, and a consultative examiner's evaluation supported that limitation).

58. Where, as here, "the record contains at least some evidence of a specific limitation, the ALJ may appropriately reach a specific RFC incorporating that limitation." Heckman v. Comm'r of Soc. Sec., 2019 U.S. Dist. LEXIS 58447, at * 11 (W.D.N.Y. Apr. 4, 1029) (citing Palistrant v. Comm'r of Soc. Sec., No. 16-CV-588, 2018 U.S. Dist. LEXIS 167960 (W.D.N.Y. Sep. 28, 2018) (holding that claimant's testimony that he had to alternate between sitting and standing every 20-30 minutes and general treatment notes about sitting and standing limitations supported RFC that the claimant be able to alternate between sitting and standing every half hour)).

59.     Thus, based on the evidence discussed above, the Court finds that the ALJ did not err when she determined that Plaintiff must be able to alternate between sitting, standing, and walking every half hour.

60.     For the foregoing reasons, this Court finds that substantial evidence supports the ALJ's determination, which is devoid of legal error.  Therefore, remand is not warranted.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 11) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 14) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:          November 1, 2019
                Buffalo, New York


                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge